UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LARRY P. BURR,<br><br>               Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>               Defendant. | Case No. C13-5290-JLR-BAT<br><br>**REPORT AND RECOMMENDATION** |

Larry P. Burr seeks review of the denial of his Disability Insurance Benefits ("DIB") application. He contends the ALJ erred by (1) finding that Mr. Burr's depression was not a severe impairment, (2) finding that Mr. Burr's physical and mental impairments did not combine to equal a Listing, (3) discounting the credibility of Mr. Burr's testimony and lay witness statements, and (4) improperly rejecting medical opinions when assessing Mr. Burr's Residual Functional Capacity ("RFC") and formulating a hypothetical for the vocational expert. Dkt. 16. As discussed below, the Court recommends the Commissioner's decision should be **AFFIRMED** and the case be **DISMISSED** with prejudice.

## BACKGROUND

Mr. Burr is currently 49 years old, graduated from high school and completed flight

REPORT AND RECOMMENDATION - 1

training, and has worked as a commercial airline pilot and landscaper.[1] On January 20, 2011, he applied for DIB, alleging disability as of January 1, 2009. Tr. 98. His application was denied initially and on reconsideration. Tr. 123-26, 131-35. The ALJ conducted a hearing on January 17, 2012 (Tr. 42-96), thereafter finding Mr. Burr not disabled. Tr. 25-37. As the Appeals Council denied Mr. Burr's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-5.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:** Mr. Burr had not engaged in substantial gainful activity since January 1, 2009.

**Step two:** Mr. Burr's degenerative disc disease is severe.

**Step three:** These impairment did not meet or equal the requirements of a listed impairment.[3]

**RFC:** Mr. Burr can perform sedentary work, except he must be able to sit or stand at will; he can occasionally climb, balance, stoop, kneel, crouch, and crawl; and he should avoid concentrated exposure to vibrations and hazards.

**Step four:** Mr. Burr cannot perform his past work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Mr. Burr can perform, he is not disabled.

Tr. 25-37.

## DISCUSSION

**A.    The ALJ Did Not Err at Steps Two or Three**

Mr. Burr argues that the ALJ erred in failing to identify depression as a severe impairment at step two, but has failed to establish that the ALJ erred in finding that his

---

[1] Tr. 98, 194.
[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

REPORT AND RECOMMENDATION - 2

depression caused no more than a minimal limitation in his ability to perform basic mental work activities.  *See*  20 C.F.R. § 404.1520(c) (explaining that a severe impairment is one that "significantly limits your physical or mental ability to do basic work activities").  Mr. Burr never sought or received mental health treatment, and the only medical evidence mentioning depression was provided by pain management physician J.K. Rotchford, M.D.  Tr. 343-50.  Dr. Rotchford's treatment notes do not specify particular limitations caused by Mr. Burr's depression, but simply speculate in September 2011 that Mr. Burr is "at a high risk of suicide and grossly disabled" without indicating the basis for this opinion on an issue reserved to the Commissioner.  Tr. 343.  Particularly given that Dr. Rotchford opted not to treat Mr. Burr's depression, noted a few weeks later that Mr. Burr's depression is "relatively minor," and indicated in December 2011 that Mr. Burr did not have depression that affected his pain (Tr. 337), Dr. Rotchford's notes support the ALJ's finding that Mr. Burr's depression was not severe.  Tr. 27-28.  Dr. Rotchford's opinion is further undermined by Mr. Burr's hearing testimony, given that Mr. Burr testified that he did not have any medical conditions other than back pain.  Tr. 81.[4]  For these reasons, Mr. Burr has not established that the ALJ erred at step two.

Mr. Burr has also failed to establish that the ALJ erred at step three, in finding that his impairments did not medically equal a Listing, "[b]ecause there are no medical findings or suggestions in the medical record that any of the claimant's impairments meet the conditions or severity requirements for any listed impairment[.]"  Tr. 29.  Though Mr. Burr emphasizes that the State agency consultants did not have an opportunity to review all the medical evidence (Dkt. 20 at 2), and thus a State agency opinion regarding equivalence is insufficient, Mr. Burr has nonetheless failed to present *any evidence* suggesting that the claimant's impairments in

---

[4] Oddly, Mr. Burr disputes that he testified to this effect (Dkt. 20 at 1), but does not acknowledge this section of testimony.

REPORT AND RECOMMENDATION - 3

combination meet or equal the conditions or severity requirements of a Listing.  In the absence of such evidence, Mr. Burr's argument is unavailing.  *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant *presents evidence in an effort to establish equivalence*." (emphasis added)).

**B.     The ALJ Did Not Err in Discounting Mr. Burr's Credibility.**

The ALJ provided several reasons to discount Mr. Burr's credibility, including (1) inconsistent daily activities, (2) inconsistent statements regarding his work history, (3) lack of support in the medical record[5], (4) lack of consistent treatment and/or compliance with treatment, and (5) lack of motivation to work in order to avoid support payments to his ex-wife and children.  Tr. 30-32.  Mr. Burr contends that none of these reasons are clear and convincing, but the Court agrees only as to one of the reasons.

**1.     Daily Activities**

As to daily activities, Mr. Burr contends that the activities cited by the ALJ — specifically his ability to prepare simple meals, visit with his family, and handle finances — were not inconsistent with any of his allegations.  Dkt. 16 at 12-13.  But the ALJ also cited Mr. Burr's ability to "lift[] a roll of carpet to put in a pick-up truck" (which resulted only in tightness in his lower back), as contradicting Mr. Burr's testimony that he cannot bend over to tie his shoes and cannot stand or walk for any length of time.  Tr. 31.  Even if the record is not entirely clear as to the context of this activity, the ALJ reasonably inferred that it was inconsistent.

---

[5] Mr. Burr correctly notes that lack of corroboration for pain testimony cannot *alone* discredit a claimant's testimony, but does not acknowledge that this was only one of multiple reasons provided by the ALJ.  Dkt. 20 at 4-5.  Neither does Mr. Burr argue that the ALJ erred in finding that the medical evidence did not support his allegations.  Thus, Mr. Burr has not established that the ALJ erred in considering the lack of corroboration in the medical record as one reason among many.

REPORT AND RECOMMENDATION - 4

1  Furthermore, as noted by the Commissioner, Mr. Burr himself reported that he was capable of
2  managing his money, and that his impairments had caused no change in his ability to do so (Tr.
3  206-07), and thus Mr. Burr's challenge to the ALJ's finding as having "no basis in the record" is
4  meritless.

5  **2.   Inconsistent Statements & Intermittent, Conservative Treatment**

6  The ALJ's strongest reasons for discounting Mr. Burr's credibility involve inconsistent
7  statements and lack of consistent treatment. The ALJ identified several inconsistent statements
8  of record, specifically statements Mr. Burr made regarding why he stopped working and the
9  circumstances under which he stopped working. Tr. 30-31. The ALJ noted that the evidence
10 showed that (1) Mr. Burr did not disclose his true health problems to his employer; (2) Mr. Burr
11 testified that he voluntarily resigned from his job in lieu of termination, but also received
12 unemployment benefits; (3) Mr. Burr reported to his doctor on one occasion that he was
13 unemployed due to economic problems, rather than health problems. *Id.* (referencing Tr. 51-53,
14 72-73, 282). Mr. Burr contends that these reasons do not undermine his credibility, and the
15 Court disagrees as to two of the reasons. Although Mr. Burr contends that it was reasonable for
16 him to disguise the true nature of his ailment in order to prevent being blacklisted as a pilot (Dkt.
17 16 at 13), even if he believed he was being dishonest for a good reason, making knowingly false
18 statements nonetheless undermines his credibility. Mr. Burr further defends his statement to a
19 physician that he was unemployed due to the economy rather than his health (Tr. 282), as
20 evidence that he "simply wanted to get well and was desperate to find a solution" (Dkt. 16 at 14),
21 but it is not clear why Mr. Burr's desperation would have led him to misrepresent the reasons for
22 his unemployment to his medical provider. The ALJ reasonably construed this statement as
23 evidence of Mr. Burr's lack of candor.

REPORT AND RECOMMENDATION - 5

1   The ALJ also concluded that if Mr. Burr had left his previous job voluntarily, he would
2   not have received unemployment benefits, but it is not clear how she reached that conclusion.  In
3   Oregon, where Mr. Burr last worked, employees who quit working for good cause can be entitled
4   to unemployment benefits.  *See Aguilar v. Emp't Dep't*, Case No. 12AB0227;A151042; 2013
5   WL 4761055, at *2-3 (Or. App. Sept. 5, 2013) (explaining that an employee who voluntarily
6   quits working *without* good cause is not eligible for unemployment benefits, but that resigning in
7   lieu of a stigmatizing discharge amounts to "good cause").  The ALJ did not cite facts suggesting
8   that Mr. Burr lied about his receipt of or eligibility for unemployment benefits to her or anyone
9   else, and thus the fact that he apparently did receive these benefits does not bear on his
10  credibility.

11  The ALJ also cited evidence showing that Mr. Burr's treatment was intermittent and
12  conservative.  Tr. 31-32.  Although Mr. Burr now claims that he could not afford more
13  aggressive or regular treatment (Dkt. 16 at 15-16) — though he admitted at the administrative
14  hearing that he had never applied for DSHS benefits coverage (Tr. 73) — this new rationale does
15  not explain all of Mr. Burr's treatment decisions.  He testified at the administrative hearing that
16  he did not seek the care of a physician until February 2010 (more than a year after his alleged
17  disability onset) because his pain was manageable with monthly chiropractic treatment.  Tr. 56-
18  57.  Once he did seek medical attention, his treatment recommendations were conservative and
19  not always followed.  One of Mr. Burr's physicians told him that surgery was not indicated and
20  suggested psychological counseling, but there is no evidence that Mr. Burr followed up on this
21  recommendation.  Tr. 280.  Mr. Burr apparently stopped seeing another provider, Dr. Rotchford,
22  after just a couple of visits, and Dr. Rotchford wrote him a letter to ask about his unexplained
23  departure from treatment.  Tr. 351.  Mr. Burr returned to Dr. Rotchford shortly thereafter, for at

1 | least two visits.  Tr. 352-53.  Dr. Rotchford recommended that Mr. Burr try swimming (Tr. 352),
2 | but there is no evidence that he followed through with this recommendation.

3 | Moreover, Mr. Burr reported that he took prescription pain medication only twice a
4 | month, and on other days took up to 20 capsules of Tylenol per day.  Tr. 60-62.  He also reported
5 | that acupuncture helped his pain.  Tr. 349.  The ALJ reasonably concluded that this evidence of
6 | intermittent treatment, a failure to follow through on treatment recommendations, and
7 | improvement with conservative treatment undermined Mr. Burr's testimony regarding the
8 | severity of his impairments.  *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding
9 | that a claimant's usage of over-the-counter medication is "conservative treatment" that
10 | undermines testimony regarding severity of an impairment); *Molina v. Astrue*, 674 F.3d 1104,
11 | 1113 (9th Cir. 2012) (indicating that an ALJ may properly discount a claimant's credibility if the
12 | level or frequency of treatment is inconsistent with the level of complaints).

13 | **3.     Motivation to Work**

14 | As to the ALJ's final reason for discounting Mr. Burr's credibility — his possible
15 | motivation to avoid working so as to avoid child support and maintenance payments (Tr. 31) —
16 | the ALJ did not cite any evidence to support her speculation.  She noted that Mr. Burr filed for
17 | disability benefits two months before his divorce was finalized and that his divorce-related
18 | payment obligations are "substantial," but these facts do not support an inference that Mr. Burr's
19 | allegations lack credibility.

20 | In sum, the ALJ did provide some clear and convincing reasons to discount Mr. Burr's
21 | credibility, and the inclusion of improper reasons does not negate the overall adverse credibility
22 | determination.  *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th
23 | Cir. 2008).  Thus, the ALJ's credibility determination should be affirmed.

REPORT AND RECOMMENDATION - 7

**C.     The ALJ Did Not Err in Discounting the Lay Statements.**

Mr. Burr's ex-wife, Cheryl Besaw Burr, wrote a letter on Mr. Burr's behalf.  Tr. 240.  She described witnessing Mr. Burr being unable to move for days at a time due to "such excruciating pain that he would go into convulsions." *Id.*  She also noted that Mr. Burr often could not manage his own hygiene, including using the shower and toilet.  *Id.*

The ALJ rejected Ms. Burr's statement due to its reliance on Mr. Burr's subjective self-report and its inconsistency with the record.  Tr. 35.  The ALJ noted that Mr. Burr never reported experiencing convulsions when describing his symptoms to any medical provider, and her statement regarding Mr. Burr's difficulty bathing is contradicted by Mr. Burr's own self-report.  *See* Tr. 204.  These inconsistencies are germane reasons to discount Ms. Burr's letter, and are thus a proper rationale for the ALJ's assessment.

The ALJ also discounted a lay statement provided by vocational rehabilitation counselor Karen McBirnie.  Tr. 34.  Ms. McBirnie described Mr. Burr's self-reported symptoms and indicated that she could not "think of a job that could accommodate these limitations," and thus recommended that Mr. Burr apply for Social Security benefits.  Tr. 242.  The ALJ indicated that she discounted Ms. McBirnie's letter because it relied on Mr. Burr's subjective self-report, was inconsistent with the record as a whole, and opined on an issue reserved to the Commissioner.  Tr. 34.  While finding that Ms. McBirnie's letter is "inconsistent with the record as a whole" is vague, the ALJ's other two reasons for discounting Ms. McBirnie's letter are specific and germane to her and are therefore sufficient.

**D.     The ALJ Did Not Err in Assessing Medical Evidence.**

Mr. Burr's treating physician Stuart Weinstein, M.D., submitted two medical source statements on Mr. Burr's behalf.  Tr. 294-300, 305-08.  Dr. Weinstein included a note on each

1  statement indicating that his opinions relied in part on Mr. Burr's subjective reporting.  Tr. 300,

2  308.  The ALJ discounted Dr. Weinstein's statements on that basis, given that their treating

3  relationship with not substantial (only four office visits, nearly a year before the statements were

4  written) and Dr. Weinstein's treatment notes do not corroborate his opinions regarding severe

5  functional limitations.  Tr. 33.

6       Mr. Burr objects to the ALJ's suggestion that his treatment relationship with Dr.

7  Weinstein was "not substantial," ignoring the fact that regulations direct ALJs to consider the

8  length of a treating relationship when evaluating a provider's opinion.  *See* 20 C.F.R. § 1527.

9  Thus, the ALJ's reference to Mr. Burr's relatively brief treatment relationship was not improper

10 here.

11      Mr. Burr also argues that the ALJ improperly discounted Dr. Weinstein's opinions as

12 based on subjective self-reporting, but Dr. Weinstein *himself* highlighted the fact that his

13 opinions were based in part on Mr. Burr's subjective self-report.  Although Mr. Burr cites

14 *Regennitter v. Commissioner of Social Security Administration* as authority showing that this

15 reason is improper, Mr. Burr's reliance is misplaced.  The *Reginnitter* court indicated that

16 because a provider "conducted extensive objective psychological testing" and "explained in

17 detail how the results of each test supported his diagnoses," the ALJ erred in discounting the

18 provider's opinions on the basis that he simply believed the claimant's self-report.  166 F.3d

19 1294, 1300 (9th Cir. 1999).  But here, Dr. Weinstein did not cite any test results in the opinions

20 and instead appended a handwritten note to the opinion forms to emphasize that his answers

21 regarding functional limitations relied in part on Mr. Burr's subjective reporting.  The ALJ did

22 not err in finding that this reliance on self-report — which was properly found to lack credibility

23 — undermined the value of Dr. Weinstein's opinions.  *See Batson v. Comm'r of Social Sec.*

REPORT AND RECOMMENDATION - 9

*Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

The ALJ also discounted the opinions (Tr. 301-04, 320-37) of treating physician Cong Yu, M.D., for similar reasons: because he (1) treated Mr. Burr only three times; (2) did not cite any objective findings to support his opinions and therefore appeared to rely on Mr. Burr's self-report, given that his opinions are inconsistent with his treatment notes; and (3) did not answer a question asking if Mr. Burr was malingering. Tr. 33. Mr. Burr again objects to the ALJ's emphasis on Dr. Yu's relatively brief treating relationship, which the Court again indicates is proper under 20 C.F.R. § 1527. The Court agrees with Mr. Burr that Dr. Yu's failure to answer the malingering question is not evidence of malingering, but the ALJ did properly identify how Dr. Yu's opinions are inconsistent with his treatment notes: for example, Dr. Yu indicated in the opinion form that the findings supporting his opinions regarding Mr. Burr's severe pain were his restricted range of motion and his MRI showing bulging and facet arthropathy, but Dr. Yu's treatment notes indicate that Mr. Burr's "range of motion of the lumbar and cervical spine are well preserved" and that Mr. Burr's MRI showed only mild bulging and minimal facet arthropathy. Tr. 33 (referencing Tr. 313, 316). Dr. Yu does not explain the basis for his opinions regarding functionality, and the treatment notes do not explain or support the severe limitations he indicated on the forms. Tr. 309-30. The ALJ did not err in discounting Dr. Yu's opinions on this basis. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

Finally, Mr. Burr challenges the ALJ's assessment of Dr. Rotchford's opinion (Tr. 336-41). The ALJ described Dr. Rotchford's opinions, and explained that they were assigned "little weight" because they relied on Mr. Burr's non-credible self-report, and were not supported by a

lengthy treatment relationship or the record as a whole.  Tr. 33-34.  Though Mr. Burr correctly states that the record contains Dr. Rotchford's treatment notes, it does not necessarily follow that his treatment notes support his opinion: Dr. Rotchford did not cite any particular notes or clinical findings in his opinion form.  Dr. Rotchford's treatment notes contain no findings supporting any of the functional limitations he indicated on the opinion form, and instead record Mr. Burr's self-reported description of pain symptoms.  *Compare* Tr. 336-41 *with* Tr. 342-69.  The ALJ reasonably concluded that Dr. Rotchford's opinion was therefore based primarily on Mr. Burr's self-report, and did not err in discounting it on that basis.

**E.     Plaintiff Fails to Identify Error in the ALJ's RFC Assessment.**

Mr. Burr argues that the ALJ erred in assessing his RFC because she did not account for the opinions of his treating physicians, but as explained in the previous section, the ALJ properly discounted[6] those opinions and thus did not need to account for them when formulating the RFC assessment.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008).  Though Mr. Burr's argument is based on the assumption that an RFC assessment must reflect the medical evidence, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."  *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).  The ALJ — not a physician — is charged with assessing a claimant's RFC.  *See* Social Security Ruling 96-5p, 1996 WL 374183, at *4-5 (Jul. 2,

---

[6] Though Mr. Burr emphasizes that his treating physicians' opinions were not contradicted by other medical evidence, this is not the *only* basis on which a medical opinion can be discounted. *See, e.g.*, *Batson*, 359 F.3d at 1195 (a treating physician's opinions may be discounted when it is "in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of [the claimant's] medical condition, and was based on [the claimant's] subjective descriptions of pain[,]" as well as when that opinion is "conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings[.]").  Further, the Ninth Circuit has specifically held that an "ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

REPORT AND RECOMMENDATION - 11

1996).

To the extent that Mr. Burr also argues that the RFC assessment also overlooked evidence of his medication side effects, the record does not support this argument. Dr. Weinstein and Dr. Yu opined that Mr. Burr's medications may make him drowsy. Tr. 295, 322. Dr. Rotchford indicated that the potential side effects ("some drowsiness") of Mr. Burr's medication were minor. Tr. 337. None of the physicians thus actually indicated that Mr. Burr experiences drowsiness or opined as to the degree of limitation caused by such drowsiness, but Mr. Burr testified that taking Vicodin makes him drowsy, but he also testified that he only takes Vicodin approximately twice a month when he needs to leave the house. Tr. 59-60, 84. The ALJ specifically referenced Plaintiff's testimony regarding medication use (Tr. 30-34) and provided clear and convincing reasons to discount Plaintiff's credibility, and thus Mr. Burr has failed to establish that the ALJ should have accounted for any medication side effects. *See Thomas*, 278 F.3d at 960 (finding that where the only evidence of a medication side effect is a claimant's subjective testimony, the ALJ need not account for that side effect if the ALJ properly discounted the claimant's credibility).

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision should be **AFFIRMED** and recommends the case be **DISMISSED** with prejudice.

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **September 30, 2013.** If no objections are filed, the matter will be ready for the Court's consideration on **October 4, 2013**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14

days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 16th day of September, 2013.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13